# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

PATAGONIA, INC.,

        Plaintiff,

    v.

MYLOCKER.COM LLC,

        Defendant.

Case No.

Hon.

**JURY TRIAL DEMAND**

## COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, DILUTION AND COPYRIGHT INFRINGEMENT

Patagonia Inc. ("Patagonia") brings this lawsuit to stop MyLocker.com LLC ("Defendant" or "MyLocker") from copying Patagonia's famous logo onto hoodies and sweatshirts, among other products, and offering them for sale on its website. Defendant is a retailer who offers, promotes, and sells apparel and other products to consumers and resellers; it fulfills orders by manufacturing and/or printing specific quantities of such products that are requested, operating as a "print-on-demand" business. Within its print-on-demand product lines, Defendant advertises, offers, produces, and sells counterfeit and infringing Patagonia products as if such products originate from or are sponsored by Patagonia. Below are examples:







To stop this infringement and counterfeiting of Patagonia's iconic

trademarks and prevent further damage to Patagonia and its brand, Patagonia

alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Patagonia, Inc. ("Patagonia") is a California corporation headquartered

at 259 West Santa Clara Street, Ventura, California 93001.  Patagonia has been

designing, developing, marketing, and selling outdoor apparel, accessories, and

active sportswear for nearly fifty years.  Patagonia's PATAGONIA brand and P-6

logo are famous in the United States and around the world, and instantly

recognized by consumers as a symbol of innovative apparel designs, quality

products, and environmental and corporate responsibility.

2.      MyLocker.com LLC ("MyLocker") is a corporation with its principal

place of business located at 1300 Rosa Parks Blvd., Detroit, Michigan 48216.

MyLocker offers, promotes, and sells products that are counterfeit versions of

Patagonia's intellectual property rights online throughout the country at

https://MyLocker.net.

3.      Patagonia's trademark claims arise under the Trademark Act of 1946

(the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006

(15 U.S.C. §§ 1051, *et seq.*).  Patagonia's claims for copyright infringement arise

from MyLocker's infringement of Patagonia's exclusive rights under the United

States Copyright Act (17 U.S.C. §§ 101, *et seq.*).  This Court has jurisdiction over

such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair

competition), 17 U.S.C. § 501 (copyright), 28 U.S.C. § 1331 (federal question), and

15 U.S.C. § 1121 (Lanham Act).  This Court has jurisdiction over the state law

claims under 28 U.S.C. § 1367 (supplemental jurisdiction) and 28 U.S.C. § 1332

(diversity).

4.      This Court has personal jurisdiction over MyLocker because

MyLocker has its principal place of business in this district.  MyLocker also

advertises, promotes, and sells its counterfeit products to purchasers in Michigan and this district through shopping platforms and websites which are all accessible to residents of this district.

5.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1400(a) because MyLocker infringes Patagonia's intellectual property in this district, transacts business in this district, and a substantial part of the events giving rise to the claims asserted arose in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### Patagonia's History

6.     Patagonia was founded in the late 1960s to design and sell climbing clothes and other active sportswear.  The company adopted the brand "PATAGONIA" to differentiate a related business that designed and manufactured climbing gear and tools.  PATAGONIA was chosen as the trademark to call to mind romantic visions of glaciers tumbling into fjords, jagged windswept peaks, gauchos, and condors.  Since at least 1973, the PATAGONIA brand has appeared on a multi-colored label inspired by a silhouette of the jagged peaks of the Mt. Fitz Roy skyline (the "P-6 logo").

7.     In the fifty years since Patagonia's PATAGONIA business started, the PATAGONIA brand and its P-6 logo have become among the most identifiable brands in the world.  Patagonia's products now include a wide range of apparel

products and equipment, including technical products designed for climbing, skiing and snowboarding, surfing, fly fishing, and trail running, as well as fleece, T shirts, hoodies and sweatshirts which are sold around the world.

8.     Over the years, Patagonia has been recognized and honored for its business initiatives, including receiving the Sustainable Business Council's first "Lifetime Achievement Award."  In 1996, with an increased awareness of the dangers of pesticide use and synthetic fertilizers in conventional cotton growing, Patagonia began the exclusive use of organically grown cotton and has continued that use for more than twenty years.  It was a founding member of the Fair Labor Association®, which is an independent multi-stakeholder verification and training organization that audits apparel factories.  Additionally, since 1985 Patagonia has pledged 1% of sales to environmental groups to preserve and restore our natural environment, donating more than $100 million to date.  In 2002, Patagonia's founder, Yvon Chouinard, along with others, created a non-profit called 1% For the Planet® to encourage other businesses to do the same.  Today, more than 1,200 member companies have donated more than $150 million to more than 3,300 nonprofits through 1% For the Planet.  In 2012, Patagonia became one of California's first registered Benefit Corporations, ensuring Patagonia could codify into its corporate charter consideration of its workers, community, and the environment.  In 2016, Patagonia pledged to donate all revenue from sales on

Black Friday, donating $10 million to environmental grantees based on customers' purchases on that day.  In 2018, Patagonia pledged an additional $10 million in grants to environmental groups in response to recent tax cuts given to businesses. Over the course of two weeks in December 2019, Patagonia matched another $10 million in donations to environmental and other grassroots organizations. Patagonia's owners recently donated their holdings in the company to support initiatives and innovations addressing climate change.

**Patagonia's Trademarks**

9.     Patagonia owns numerous registrations for its distinctive P-6 logo and PATAGONIA trademark, covering a wide-ranging assortment of products.  Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 1189402 / Feb. 9, 1982 | Men's and Women's Clothing-Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods and Rainwear | 08/1974 |
|  | 1294523 / Sept. 11, 1984 | Men's, Women's and Children's Clothing-Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts | 08/1974-1981 |
| | 1547469 / July 11, 1989 | Men's, Women's and Children's Clothing- Namely, Jackets, Pants, Shirts, Sweaters, Vests, Skirts, | 08/1974-1981 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| ▬▬▬▬▬ | | Underwear Tops and Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, Suspenders, and Belts | |
| patagonia | 1775623 / June 8, 1993 | Luggage back packs, and all-purpose sports bags | 08/1988 |
| PATAGONIA | 1811334 / Dec. 14, 1993 | Luggage, back packs, fanny packs and all-purpose sport bags, footwear, ski bags and ski gloves | 08/1990 |
| PATAGONIA | 2260188 / July 13, 1999 | Computerized on-line ordering activities in the field of clothing and accessories; Providing information in the field of technical clothing and accessories for use in recreational, sporting and leisure activities; providing information in the field of existing and evolving environmental issues | 10/1995 |
| PATAGONIA.COM | 2392685 / Oct. 10, 2000 | On-line retail store and mail order services featuring technical clothing, footwear, and accessories; Computer services in the nature of on-line information related to the environment and clothing | 10/1995 |
| PATAGONIA | 2662619 / Dec. 17, 2002 | Retail store services featuring clothing, footwear, luggage and a wide variety of sporting goods and accessories | 06/1986 |
| PATAGONIA | 5491401 / June 12, 2018 | Reusable bottles sold empty; insulated containers for food or beverage for domestic use; cups, mugs and growlers | 09/2014 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 5561006 / Sept. 11, 2018 | Stickers; paper banners; fiction and non-fiction books on a variety of topics; posters; non-magnetically encoded gift cards; photographs | 12/1991 |

These registrations for the PATAGONIA mark and logos are in full force and effect. The registrations (with the exception of Reg. No. 5561006) have become incontestable under 15 U.S.C. § 1065. A color image of the P-6 logo follows:



Collectively, these marks, Patagonia's other registered trademarks, and its common law marks are referred to as the "PATAGONIA trademarks." Patagonia also owns a registered copyright (Registration No. VA 1-801-788) for the P-6 logo.

10.    The PATAGONIA trademarks are distinctive, arbitrary and fanciful, entitled to the broadest scope of protection, and certain of the PATAGONIA trademarks are registered worldwide.

11.    For many years prior to the events giving rise to this Complaint and continuing to the present, Patagonia annually has spent enormous amounts of time,

money, and effort advertising and promoting the products on which its

PATAGONIA trademarks are used.  PATAGONIA brand products are advertised in

a variety of contexts and media, including in print and on the Internet.  In addition to

advertising by Patagonia, the PATAGONIA trademarks are also advertised and

promoted and presented at point of sale by numerous retailers.  Consumers,

accordingly, are exposed to the PATAGONIA trademarks in a wide range of

shopping and post-sale contexts.

12.     Patagonia has sold its PATAGONIA brand products all over the

world, including throughout the United States and Michigan.  Through its

promotion and investment in its brand and extensive sales, publicity, awards, and

leadership in sustainable sourcing practices, Patagonia has acquired enormous

goodwill in its PATAGONIA trademarks.  The PATAGONIA trademarks are

famous within the meaning of the Trademark Dilution Revision Act, enjoy strong

consumer recognition, and are recognized around the world and throughout the

United States by consumers as signifying high quality products made by a

responsible company.

**Defendant's Infringement of Patagonia's Rights**

13.     In blatant disregard of Patagonia's rights in the PATAGONIA

trademarks—and without authorization from Patagonia—MyLocker has promoted,

offered for sale, and sold products, including hoodies and sweatshirts, bearing

10

counterfeit and infringing reproductions of the PATAGONIA trademarks.  These designs and logos, and the products bearing them, are referred to as the "MyLocker Designs."

14.     The MyLocker Designs are identical to the P-6 logo artwork, the registered P-6 logo trademark, and the registered PATAGONIA word marks. MyLocker's products bearing the MyLocker Designs are identical to and compete directly with goods sold by Patagonia, including hoodies, sweatshirts, and shirts.

15.     MyLocker's use of the MyLocker Designs has caused or will cause a likelihood of confusion among consumers regarding the source of MyLocker's products, and whether Patagonia has sponsored, licensed, authorized, or is somehow affiliated with MyLocker.

16.     MyLocker began using the MyLocker Designs long after the PATAGONIA trademarks became famous.  The MyLocker Designs have caused or are likely to cause dilution of Patagonia's famous and distinctive marks by diminishing their distinctiveness and singular association with Patagonia. Patagonia has no alternative but to protect its goodwill and famous trademark by obtaining an injunction against MyLocker's further use of the MyLocker Designs.

17.     On information and belief, MyLocker has created, produced, marketed, and sold products bearing certain of the MyLocker Designs, and/or has worked with third party sellers to produce, market, and sell products bearing certain

MyLocker Designs.  To the extent such cooperation has occurred between MyLocker and third-party sellers, MyLocker has been involved in both the production and sale of such products and is liable for damage caused to Patagonia and its brand.  There is no doubt that MyLocker's conduct has been willful, as MyLocker has continued selling products bearing the PATAGONIA trademark long after Patagonia raised this issue with MyLocker, and long after Patagonia filed a lawsuit to address its concerns in California.  For example, the "Patagonia Together As One" shirt, shown above, was accessed and purchased by Patagonia's representatives in March 2023, and initially located through a Google search across mylocker.net for the term "Patagonia."

18.     In addition to causing Patagonia to lose sales of its genuine PATAGONIA products, incur legal fees, and suffer other monetary losses, MyLocker's actions have caused and will cause Patagonia irreparable harm for which money damages and other remedies are inadequate.  Unless MyLocker is restrained by this Court, it will continue expanding its illegal activities and otherwise continue to cause irreparable damage and injury to Patagonia by, among other things:

        a.     Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the infringing and counterfeit products;

12

b.      Causing the public falsely to associate Patagonia with

MyLocker and/or its products, or vice versa;

c.      Causing the public falsely to believe Patagonia has collaborated

with MyLocker, entered a co-branding relationship with MyLocker, or is otherwise

associated with MyLocker and/or its products, or vice versa;

d.      Causing incalculable and irreparable damage to

Patagonia's goodwill and diluting the capacity of its famous PATAGONIA

trademarks to differentiate its products from those of its competitors;

e.      Causing incalculable and irreparable damage to

Patagonia's licensing and collaboration programs, and to Patagonia's ability to

control its brand partnerships and to associate itself with entities who are

specifically aligned to Patagonia's company mission; and

f.      Causing Patagonia to lose sales of its genuine

PATAGONIA products.

19.     In addition to other relief, accordingly, Patagonia is entitled to

injunctive relief against MyLocker.

## FIRST CLAIM

## FEDERAL TRADEMARK INFRINGEMENT AND COUNTERFEITING

### (15 U.S.C. §§ 1114-1117)

20.     Patagonia realleges and incorporates by reference each of the

allegations contained in paragraphs 1 through 19 of this Complaint.

21.     MyLocker has used, in connection with the sale, offering for sale, distribution, or advertising of products bearing the MyLocker Designs, counterfeit imitations of Patagonia's PATAGONIA trademarks.

22.     These acts of trademark infringement and counterfeiting have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.  MyLocker's willfullness is displayed not only in the identicality of the infringements, but in its decisions to persist in infringements after receiving cease and desist correspondence from Patagonia and entering into settlement communications with Patagonia.

23.     As a direct and proximate result of MyLocker's conduct, Patagonia is entitled to recover up to treble the amount of MyLocker's unlawful profits and Patagonia's damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

24.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires MyLocker to stop use of the MyLocker Designs, and any other mark or design similar to the PATAGONIA trademarks.

## SECOND CLAIM

## FEDERAL UNFAIR COMPETITION

**(False Designation of Origin and False Description – 15 U.S.C. § 1125(a))**

25.     Patagonia realleges and incorporates by reference each of the

allegations contained in paragraphs 1 through 24 of this Complaint.

26.     MyLocker's conduct as alleged in this Complaint constitutes the use of symbols or devices tending falsely to describe the infringing products, within the meaning of 15 U.S.C. § 1125(a)(1).  MyLocker's conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of the infringing products to the detriment of Patagonia and in violation of 15 U.S.C. § 1125(a)(1).

27.     As a direct and proximate result of MyLocker's conduct, Patagonia is entitled to recover up to treble the amount of MyLocker's unlawful profits and Patagonia's damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

28.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires MyLocker to stop use of the MyLocker Designs, and any other mark or design similar to the PATAGONIA trademarks.

## THIRD CLAIM

## FEDERAL DILUTION OF FAMOUS MARK

### (Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c))

29.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 28 of this Complaint.

30.     Patagonia's PATAGONIA trademarks (including the P-6 logo) are distinctive and famous within the meaning of the Trademark Dilution Revision Act

of 2006, 15 U.S.C. § 1125(c), and were famous prior to MyLocker's adoption of the copycat MyLocker Designs.

31.     MyLocker's conduct is likely to cause dilution of Patagonia's PATAGONIA trademark by diminishing its distinctiveness in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

32.     As a direct and proximate result of MyLocker's conduct, Patagonia is entitled to recover up to treble the amount of MyLocker's unlawful profits and Patagonia's damages, and an award of attorney's fees under 15 U.S.C. §§ 1116(a), 1117(a), and 1125(c).

33.     Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires MyLocker to stop use of the MyLocker Designs, and any other mark or design similar to the PATAGONIA trademarks.

## **FOURTH CLAIM**

## **DIRECT COPYRIGHT INFRINGEMENT**

### **(17 U.S.C. §§ 101, *et seq*., and 17 U.S.C. §§ 501, *et seq*.)**

34.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 33 of this Complaint.

35.     Patagonia owns the copyright in its P-6 logo, which is federally registered and was registered prior to MyLocker's copying.

36.     MyLocker has copied, advertised, offered for sale, and/or sold

identical copies of the P-6 logo without Patagonia's authorization or permission and in violation of Patagonia's exclusive rights in its copyright.

37.     MyLocker's unlawful reproduction, advertisement, distribution, and/or sale of Patagonia's proprietary design constitutes copyright infringement. Patagonia alleges that MyLocker acted intentionally and in bad faith when it reproduced Patagonia's copyrighted work (in identical form), and advertised, distributed, displayed, and/or sold products bearing such copyrighted design.

38.     MyLocker's infringement alleged herein has caused and, if not enjoined, will continue to cause Patagonia to suffer irreparable harm for which there is no adequate remedy at law, and has also caused damage to Patagonia in an amount which cannot be accurately computed at this time but will be proven at trial.

39.     As a direct and proximate result of MyLocker's conduct, Patagonia is entitled to injunctive relief, as well as actual damages and any profits earned by MyLocker because of its infringements or, at Patagonia's election, statutory damages of up to $150,000 for each work infringed, pursuant to 17 U.S.C. § 504.

## FIFTH CLAIM

## VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT AND TRADEMARK INFRINGEMENT

40.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 39 of this Complaint.

41.     MyLocker has the right, ability, and duty to supervise its
MyLocker.net website and the content posted thereon, including blocking and
removing infringing and counterfeit content once it has reasonable notice that
counterfeit and infringing designs and products are being promoted and sold on the
platform.

42.     MyLocker also has a direct financial interest in the conduct of any
sellers who utilize its platform, including with respect to the MyLocker Designs,
because MyLocker realizes profits through the advertisement and sale of the
infringing and counterfeit products on its platform, and through its sellers' use of
this content to create listings on MyLocker.net.

43.     MyLocker has the tools, resources, staff, technological capabilities,
and knowledge of/about listings on its platform (including the MyLocker Designs)
such that, at least once it has been put on notice that certain uses are infringing or
that certain sellers are using infringing content on MyLocker's platform, it can
locate, remove, and prevent future infringing uses.  Yet, despite its awareness that
Patagonia's intellectual property is being used on the platform, MyLocker has
continued to promote products bearing the MyLocker Designs and fulfill orders for
products bearing such designs, as well as through many other levels of support.
Thus, rather than remove and prevent further use on MyLocker's platform of
Patagonia's intellectual property, MyLocker materially contributes to and/or

induces further infringement by its (a) failure to act, and (b) provision of continuous access to and facilitation of the unauthorized use of Patagonia's intellectual property on MyLocker's platform.

44.   MyLocker has failed to adopt a policy sufficient to deter infringing content on its platform and failed to enforce such a policy with respect to the infringing and counterfeit uses of Patagonia's intellectual property.

45.   Patagonia believes that MyLocker has committed acts of contributory and/or vicarious infringement with actual or constructive knowledge of, or in reckless disregard for, Patagonia's trademarks and copyrights, which renders those acts willful, intentional, and malicious.

46.   Due to MyLocker's acts of contributory and/or vicarious infringement, Patagonia has suffered damages in an amount to be established at trial.

47.   Due to MyLocker's acts of contributory and/or vicarious infringement, MyLocker and other sellers on its site have obtained profits they would not have realized but for MyLocker's contributory and/or vicarious infringement.  As such, Patagonia is entitled to disgorgement of MyLocker's profits attributable to its contributory and/or vicarious infringement, in an amount to be established at trial.

48.   Alternatively, with respect to products sold through MyLocker's platform that infringe Patagonia's copyright, Patagonia is entitled to statutory damages up to $150,000 for each infringer's use of each copyrighted work

infringed on MyLocker's platform.

## SIXTH CLAIM

### VIOLATION OF M.C.L.A. § 445.901
### MICHIGAN CONSUMER PROTECTION ACT

49.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 48 of this Complaint.

50.     Defendant, through the above-described conduct, has engaged in and will continue to engage in, unlawful, unfair, and fraudulent business practices within the meaning of the Michigan Consumer Protection Act, M.C.L.A. § 445.901 et seq. by causing a probability of confusion as to the source, sponsorship, approval, or certification of Defendant's goods and or services.

51.     Patagonia seeks actual damages or $5,000, whichever is greater, along with reasonable attorneys' fees.

52.     Because MyLocker's conduct has been undertaken willfully, intentionally, and in reckless disregard of the possible injurious consequences, Patagonia is entitled to punitive damages under MCL 445.911 (3).

## SEVENTH CLAIM

### COMMON LAW UNFAIR COMPETITION, MISAPPROPRIATION AND
### TRADEMARK INFRINGEMENT

53.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 52 of this Complaint.

54.     Patagonia owns valid and protectable rights in its PATAGONIA trademarks (including the P-6 logo) under Michigan common law.

55.     MyLocker's conduct is likely to cause confusion, to cause mistake, or to deceive as to the source of goods offered by MyLocker, or as to affiliation, connection, association, sponsorship, or approval of such goods and services, and constitutes infringement of Patagonia's PATAGONIA trademarks at common law.

56.     By its aforesaid conduct calculated to increase business and profits by deceiving and confusing members of the public, MyLocker continues to misappropriate the valuable goodwill of Plaintiff's PATAGONIA trademarks, to infringe Plaintiff's rights therein, and to unfairly compete with Plaintiff under the laws of Michigan.

57.     Unless restrained and enjoined, the conduct of MyLocker will further impair the value of the PATAGONIA trademarks and Patagonia's business reputation and goodwill.  Patagonia has no adequate remedy at law.

58.     Patagonia is entitled to monetary damages and injunctive relief prohibiting MyLocker from using the MyLocker Designs, and any other mark or design similar to the PATAGONIA trademarks.

59.     Without injunctive relief, Patagonia has no means by which to control the continuing injury to its reputation and goodwill or that of its PATAGONIA trademarks.  Patagonia has been and will continue to be irreparably harmed.  No

amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

60.     Because MyLocker's actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to recover reasonable attorneys' fees and compensatory and punitive damages.

## EIGHTH CLAIM
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER CALIFORNIA STATUTORY LAW
**(Cal. Bus. & Prof. Code §§ 14200 *et seq*.; Cal. Bus. & Prof. Code § 17200 *et seq*.)**

61.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 60 of this Complaint.

62.     Patagonia is the owner of numerous registrations for the PATAGONIA trademarks, as well as common law rights in those marks.

63.     MyLocker has used a design that infringes upon Patagonia's PATAGONIA trademarks without the consent of Patagonia and in connection with the sale, offering for sale, distribution, or advertising of its products bearing the MyLocker Designs.

64.     MyLocker's infringement of Patagonia's PATAGONIA trademarks is likely to cause confusion, mistake, and deception as to the source of the origin of MyLocker's offerings.

65.     MyLocker has used the infringing MyLocker Designs to enhance the commercial value of its offerings.

66.     MyLocker's acts violate Patagonia's trademark rights under California Business & Professions Code §§ 14245 *et seq.*

67.     MyLocker's conduct as alleged in this Complaint also constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code §§ 17200 *et seq*.

68.     Patagonia is entitled to monetary damages and injunctive relief prohibiting MyLocker from using the MyLocker Designs, or any other mark or design that is likely to be confused with the PATAGONIA trademarks.

69.     Without injunctive relief, Patagonia has no means by which to control the continuing injury to its reputation and goodwill or that of its PATAGONIA trademarks.  Patagonia has been and will continue to be irreparably harmed.  No amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

70.     Because MyLocker's actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to treble the amount of MyLocker's unlawful profits and Patagonia's damages under California Business & Professions Code § 14250.

71.     Because MyLocker's conduct has been undertaken willfully, intentionally, and in reckless disregard of the possible injurious consequences, Patagonia is entitled to exemplary or punitive damages under Cal. Civ. Code § 3294.

## NINTH CLAIM
## TRADEMARK DILUTION UNDER CALIFORNIA LAW
### (Cal. Bus. & Prof. Code § 14247)

72.     Patagonia realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 71 of this Complaint.

73.     Patagonia owns valid and protectable rights in its PATAGONIA trademarks (including the P-6 logo).

74. The PATAGONIA trademarks—registered marks in the state of California—are distinctive and famous within the meaning of the California Model State Trademark Law, Cal. Bus. & Prof. Code § 14247, in that it is a household brand in California, and were famous prior to MyLocker's adoption of the MyLocker Designs.

75. MyLocker's acts are likely to dilute the distinctive quality of the PATAGONIA trademarks. MyLocker's acts therefore constitute trademark dilution under California Business & Professions Code § 14247, the analogous statutes of other states, and under California common law.

76. Patagonia is entitled to monetary damages and injunctive relief prohibiting MyLocker from using the MyLocker Designs, and any other mark or design similar to the PATAGONIA trademarks. Without injunctive relief, Patagonia has no means by which to control the continuing dilution of the PATAGONIA trademarks. Patagonia has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Patagonia for such harm.

77. Because MyLocker's actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to treble the amount of MyLocker's unlawful profits and Patagonia's damages under California Business & Professions Code § 14250.

78. Because MyLocker's conduct has been undertaken willfully, intentionally, and in reckless disregard of the possible injurious consequences, Patagonia is entitled to exemplary or punitive damages under Cal. Civ. Code § 3294.

## TENTH CLAIM
## TRADEMARK INFRINGEMENT UNDER CALIFORNIA COMMON LAW

79. Patagonia realleges and incorporates by reference each of the

allegations contained in paragraphs 1 through 78 of this Complaint.

80.    Patagonia owns valid and protectable rights in its PATAGONIA trademarks at common law.

81.    MyLocker's conduct is likely to cause confusion, to cause mistake, or to deceive as to the source of goods offered by MyLocker, or as to affiliation, connection, association, sponsorship, or approval of such goods and services, and constitutes infringement of Patagonia's PATAGONIA trademarks at common law.

82.    MyLocker infringed Patagonia's PATAGONIA trademarks with knowledge and intent to cause confusion, mistake, or deception.

83.    MyLocker's conduct is aggravated by that kind of willfulness, wanton-ness, malice, and conscious indifference to the rights and welfare of Patagonia for which California law allows the imposition of exemplary damages.

84.    As a direct and proximate result of MyLocker's activities, Patagonia has suffered substantial damage.

85.    Unless restrained and enjoined, the conduct of MyLocker will further impair the value of the PATAGONIA trademarks and Patagonia's business reputation and goodwill.  Patagonia has no adequate remedy at law.

86.    Patagonia is entitled to monetary damages and injunctive relief prohibiting MyLocker from using the MyLocker Designs, and any other mark or design similar to the PATAGONIA trademarks.

87.    Without injunctive relief, Patagonia has no means by which to control the continuing injury to its reputation and goodwill or that of its PATAGONIA trademarks.  Patagonia has been and will continue to be irreparably harmed.  No amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

88.    Because MyLocker's actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to recover reasonable

attorneys' fees and compensatory and punitive damages.

89.     Because MyLocker's actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to recover reasonable attorneys' fees and compensatory and punitive damages (see Cal. Civ. Code § 3294).

## PRAYER FOR JUDGMENT

WHEREFORE, Patagonia prays that this Court grant it the following relief:

1.     Adjudge that MyLocker has infringed the PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1114;

2.     Adjudge that MyLocker has infringed the PATAGONIA trademarks in violation of California and Michigan statutory law;

3.     Adjudge that MyLocker has infringed the PATAGONIA trademarks in violation of Michigan statutory law;

4.     Adjudge that MyLocker has used counterfeit reproductions of Patagonia's registered trademarks in violation of Federal, California, and Michigan law;

5.     Adjudge that MyLocker has infringed Patagonia's common law rights in the PATAGONIA trademarks;

6.     Adjudge that MyLocker has competed unfairly with Patagonia and falsely designated the origin of its products in violation of Patagonia's rights under 15 U.S.C. § 1125(a);

7.      Adjudge that MyLocker competed unfairly with Patagonia in violation of California statutory law;

8.      Adjudge that MyLocker competed unfairly with Patagonia in violation of Michigan statutory law;

9.      Adjudge that MyLocker's activities are likely to dilute Patagonia's famous PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1125(c),California, and/or Michigan law;

10.     Adjudge that MyLocker has infringed Patagonia's copyright rights in its P-6 design;

11.     Adjudge that MyLocker and its agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with it, and/or any person(s) acting for, with, by, through or under it, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

        a.      Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble the PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia, including, without limitation, any product or service that bears the MyLocker Designs, or any

other approximation of Patagonia's trademarks;

      b.     Using any word, term, name, symbol, device, or combination that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of MyLocker or their products with Patagonia, or as to the origin of MyLocker's goods, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising, or likely dilution of the PATAGONIA trademark;

      c.     Further infringing the rights of Patagonia in and to its PATAGONIA trademarks, or otherwise damaging Patagonia's goodwill or business reputation;

      d.     Further diluting the famous PATAGONIA trademarks;

      e.     Otherwise competing unfairly with Patagonia in any manner;

      f.     Further infringing Patagonia's copyright rights in its P-6 logo design, including by reproducing, distributing, or displaying such logo or any other logo or design that is substantially similar to the P-6 logo; and

      g.     Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

12.     Adjudge that MyLocker is prohibited from applying to register any trademark or service mark which is likely to be confused with, or that dilutes the distinctive quality of, the PATAGONIA trademarks;

13.     Adjudge that MyLocker must screen any submissions by third parties to its print-on-demand platforms to affirmatively remove or prevent listings by others for products that bear designs that so resemble the PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia (including the MyLocker Designs).

14.     Adjudge that MyLocker be required immediately to deliver to Patagonia's counsel its entire inventory of infringing products, including without limitation, patches and any other products, packaging, labeling, advertising and promotional material, and all plates, patterns, molds, matrices, files, data, and other material for producing or printing such items, that are in their possession or subject to their control and that infringe Patagonia's trademarks as alleged in this Complaint;

15.     Adjudge that MyLocker, within thirty (30) days after service of the Court's judgment, be required to file with this Court and serve upon Patagonia's counsel a written report under oath setting forth in detail the manner in which they have complied with the judgment;

16.     Adjudge that Patagonia recover from MyLocker its damages and lost profits, and MyLocker's profits in an amount to be proven at trial;

17.     Adjudge that MyLocker be required to account for any profits that are

attributable to their illegal acts, and that Patagonia be awarded (1) MyLocker's profits and (2) all damages sustained by Patagonia, under 15 U.S.C. § 1117, plus prejudgment interest;

18.     Adjudge that the amounts awarded to Patagonia pursuant to 15 U.S.C. § 1117 shall be trebled;

19.     Adjudge that Patagonia recover damages based on MyLocker's counterfeit use of Patagonia's registered trademarks, including statutory damages at Patagonia's election;

20.     Adjudge that Patagonia recover from MyLocker its damages based on MyLocker's copyright infringement, or statutory damages at Patagonia's election;

21.     Adjudge that Patagonia recover punitive damages or exemplary damages from Defendants based on Defendants' conduct done willfully, intentionally, and in reckless disregard of its possible injurious consequences.

22.     Order an accounting of and impose a constructive trust on all of MyLocker's funds and assets that arise out of its infringing, dilutive activities;

23.     Adjudge that Patagonia be awarded its costs and disbursements incurred in connection with this action, including Patagonia's reasonable attorneys' fees and investigative expenses; and

24.     Adjudge that all such other relief be awarded to Patagonia as this Court deems just and proper.

Respectfully submitted,


FISHMAN STEWART PLLC


Date:  June 28, 2023                    By:  /s/ Barbara L. Mandell
                                        Barbara L. Mandell (P36437)
                                        Kristyn C. Webb (P83296)
                                        800 Tower Drive, Suite 610
                                        Troy, MI 48098
                                        Telephone: (248) 594-0600
                                        Facsimile:  (248) 594-0610
                                        Email: bmandell@fishstewip.com
                                        Attorneys for Plaintiff


                                        VERSO LAW GROUP LLP
                                        (All to be Admitted)
                                        Gregory S. Gilchrist (Cal. Bar No. 111536)
                                        Amy Shahan Parigi (Cal. Bar No. 261948)
                                        Ryan Bricker (Cal. Bar No. 269100)
                                        Paymaneh Parhami (Cal. Bar No. 335604)
                                        209 Kearny Street, Third Floor
                                        San Francisco, California 94108
                                        Telephone:   (415) 534-0495
                                        Facsimile:   (270) 518-5974
                                        Email:greg.gilchrist@versolaw.com
                                               amy.parigi@versolaw.com
                                               ryan.bricker@versolaw.com
                                               paymaneh.parhami@versolaw.com

## DEMAND FOR JURY TRIAL

Patagonia, Inc. demands that this action be tried by a jury.

FISHMAN STEWART PLLC


Date:  June 28, 2023          By:  /s/ Barbara L. Mandell
                             Barbara L. Mandell (P36437)
                             Kristyn C. Webb (P83296)
                             800 Tower Drive, Suite 610
                             Troy, MI 48098
                             Telephone: (248) 594-0600
                             Facsimile:  (248) 594-0610
                             Email: bmandell@fishstewip.com
                             Attorneys for Plaintiff


                             VERSO LAW GROUP LLP
                             (All to be Admitted)
                             Gregory S. Gilchrist (Cal. Bar No. 111536)
                             Amy Shahan Parigi (Cal. Bar No. 261948)
                             Ryan Bricker (Cal. Bar No. 269100)
                             Paymaneh Parhami (Cal. Bar No. 335604)
                             209 Kearny Street, Third Floor
                             San Francisco, California 94108
                             Telephone:  (415) 534-0495
                             Facsimile:   (270) 518-5974
                             Email:greg.gilchrist@versolaw.com
                                   amy.parigi@versolaw.com
                                   ryan.bricker@versolaw.com
                                   paymaneh.parhami@versolaw.com